Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals of the Fourth Circuit are admonished to draw a line and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. All right, we would be happy to hear United States v. Maynes and Mr. Bidner. Good morning. May it please the Court, I am Mark Bidner representing Michael Maynes and your Honors know from the briefing in this case that I want to be sure that I hear you. Yes, sir. Can you hear now? Up a little. Perfect. I hope it's perfect. So the main issue. I think you are going to have to figure out and you will know what I think when you hear it. You will have to either speak up or speak more directly into my ear. I don't want to be too loud. We want you to. It's a very forgiving court. Thank you. We want to hear what you say. Thank you, Judge. So, of course, the main issue in the case as we see it is the materiality issue that the trial judge failed to instruct the jury on the issue of my client's alleged sex trafficking of these adults. And, of course, the question of materiality has to be determined from an objective standpoint, not from the subjective view of the people receiving the statements. And the court, of course, is aware from the extensive record in this case that this is not a case involving guns or kidnapping or starvation or threats of deportation to the alleged victims in this case. Of course, everything revolves around the statements. I think the most compelling case that your honors have this morning is in count three of the indictment involving Ms. Lacey Courchene. And what is interesting about the record is it doesn't reflect any statements that my client allegedly made to Ms. Courchene to persuade her to come to Virginia to do the things that the government contends she was compelled to do. This is the issue here on materiality, the question of whether the fraudulent act or the impermissible act had to actually cause some sort of commercial sex act or whether it just reasonably could have caused. The latter, your honor, I understand from the government's position. So what's wrong with the instruction then? Well, what's wrong with the instruction is that the trial court instructed the jury that any deceptive statement or misrepresentation would be sufficient linked with the proposed activity to convict. And as the Netter case, the Supreme Court showed, and before that Galvin case, that materiality is an essential element of fraud. But the caveat there is that in addition to stating whether or not any act of deception or misrepresentation would be sufficient, then there's the causal link. It's not just in isolation. That act has to be sufficient to cause a reasonable person to engage in a commercial sex act, i.e., meaning that it must be material. Why isn't that an accurate statement of the law? I think what your honor just said is an accurate statement of the law, but I guess. Isn't that what the judge said? He said any deceptive statement. But he linked it to any statement that would cause a reasonable person to engage in a commercial. It's just not in isolation. It's linked to the causal element of the crime. And you put those two things together, and the jury would have to find that that causal link meaning materiality. Well, I guess that's what we take issue with is we don't necessarily believe that the jury would come to that conclusion because. Is your claim that the charge is insufficient or that there's no evidence to support the charge? Well, in count three, I don't. Which are you arguing? I've heard you argue a little of each of those. Yes, sir. It's a little bit of each of those, Judge Shedd. That's what I heard. Yes. So we're talking now about the charge being sufficient. Correct. You think the charge is not sufficient. That's correct. And you think even if this charge were to be sufficient, there's insufficient evidence to support that charge? Certainly, with respect. I mean, is that your argument? Yes, sir. Okay. And that's what I started to speak to in count three to answer Judge Diaz's point about the act itself. Because the nature of the charge is whether the representations are sufficient to induce the person, even if they don't commit the acts, to cause the acts. I understand that. I understand the jury could hear that. But in the case of Ms. Corchain, she suggested the reason that she came to Virginia with my client, because she didn't know that he was a pimp and that she thought that she was coming to have a romantic relationship with him. And there's nothing that the jury would deduce from that to believe that what my client said to her was to induce her to engage in the kind of behavior. Okay. So that's an attack on the sufficiency of the evidence, not the charge. Well, it's on the charge as well, because it goes to the materiality of the representations that he was making to her. But your argument is this particular victim just didn't present enough to the jury to make out the offense, right? Well, and as Judge Shedd pointed out, it's a dual argument, both the sufficiency of the evidence and the nature of the instruction. Let me hear you explain why that instruction is insufficient. What is it that the jury could divine from the instruction that would lead them to conclude that Lacey Corchain came to Virginia to engage in sexual acts? What is it about the statement that my client did wrong that was fraudulent to cause her to come here? And it seems that a representation that they were going to have a romantic relationship would not be the kind of statement that somebody would reasonably rely on to engage in that kind of behavior. Yeah, that's an attack on the sufficiency of the evidence, and I understand that, and I guess we'll consider that. But you still haven't explained to me why the charge is incorrect. The jury may have reached the wrong result, in your mind, based on the evidence. But what is it about the charge that's incorrect? Well, what was the – and I'm asking rhetorically – what was the deceptive statement that my client made that constituted the fraud to induce the person? That, again, is an objection to the state of the evidence, not the charge. I understand Your Honor's point. Couldn't the jury believe, after hearing all the evidence in the case, even if they – even if someone says, that really didn't make me do it, couldn't the jury believe from all the evidence that, in fact, it did? It did? But just as easily, the jury could reject the evidence, depending upon – Absolutely, that's what the jury decides. Certainly, but the judge's charge leads them to conclude one way or the other. Suppose my client had said to the person – The difficulty that I'm having with your proposed instruction is twofold. One, it seems to indicate that it could – that it had, in fact, to cause an actual commercial sex off. And I don't think the statute reads that way. I think the statute allows a conviction if it was sufficient or could have caused it. And the other problem I have is that the statute lists a variety of means, and you concentrate just on the fraud. But the statute talks about force, threats of force, fraud, coercion, or any combination. And some of the things that were going on here, which were that you don't get to see your child or you don't get to see your daughter unless you earn $1,500 a day in prostitution. That may not be fraud, but it certainly strikes me as coercive. I agree with Your Honor, and I think that that's covered in our instruction on page 50 of the joint appendix. But as to your very first point about whether our instruction would lead the jury to believe that the act must be committed, I disagree. I think if you look at the language, it is in a subjective sense. When it says fraud means – again, this is on page 50 of the joint appendix, and it's the second sentence from the top of the instruction. Fraud means an instance or act of trickery or deceit, especially when involving misrepresentation. Such specific act of fraud must have been material to cause a person to engage. It doesn't require the completed act. As Your Honor pointed out, the statute doesn't require the completed act. So I believe that the instruction is consistent with the law. How is the instruction that was actually given inconsistent with the law? Well, if you accept our position that the law requires in a case of fraud that materiality be demonstrated, then I understand, Judge, as your point about the jury being able to deduce from the acts and the evidence that there was – that the fraud was material. I believe that the case law of the Netter case and the Gowden case require that the jury be instructed on the issue of materiality because they could conceivably conclude that if there was a statement that was not material, given the instruction that the court gave in this case saying any deceptive statement or misrepresentation, the jury could be led down a path to find something that was not material. Isn't that an awfully small, hyper-technical point? Doesn't the court instruct us not to apply thick grammarian's glasses to jury instruction? I agree with that. But I'm not so sure that I agree when we're talking about – I mean, you know, I think the questions from my colleague, Judge Diaz, gets to a difficulty that I'm having. Now, I have to take out of it a high-powered magnifying glass and put it on this instruction to see what you're getting at, number one, or number two, why there's anything wrong with the instruction that was given as a whole. Well, the jurors don't know. They're not lawyers. They're not familiar. They come in, and if they're told that – suppose my client said, my dad's the president. I really don't think the jury was in the dark about what was required. I mean, the jury was told essentially that some kind of fraud, deceit, and coercion had to be sufficient so that it could have caused a commercial sex act. And, frankly, given the evidence here, it's hard for me to see how the jury could have arrived at another verdict. But I can't believe – I ask myself in these instructions, is there some chance that the jury was actually confused about what was required? And this instruction covers – I mean, even under your reading, it still covers 99% of what the statute is about. Well, let me suggest to you why I'm making a big deal about the 1%. What happened in this case was obviously offensive and would be offensive to any fair-thinking citizen, right? I mean, there's no dispute about my client's presentation or his chosen line of work. But it rolls in with the second issue that we raised about the ruling requiring what amounts to a sanitization of some of the victims who had either engaged in prostitution themselves or who were close enough to it that they knew what it looked like. I mean, but how can telling a woman that she only gets to see her daughter if she earns a certain amount in prostitution – I mean, how can that be anything other than what the statute is aimed at? I mean, this seems to me right at the heart of what the statute is aimed at, right at the very core. That is the clearest case, Judge Wilkinson, no question. That is the clearest case, both by virtue of the standpoint of the instruction and the evidence that the jury heard. However – I take it to be the case you are making the strongest argument you think you have on this appeal. With the strongest count of the indictment, if I may – This is the strongest argument you had that there was an error below. Yes, combined with our second issue, which was that for the most part – and I think Judge O'Grady was as fair as he could be – but he made a ruling saying that the alleged victim's past was basically off the table, the jury shouldn't hear about it. And at least one of these victims engaged in prostitution, and at least two of them were exposed to it. I think the district court has a certain amount of discretion in that, and most courts have not allowed a fishing expedition into a victim's past history, because it would require a mini-trial within a trial, and also it doesn't speak relevantly, really, to the question of what Mr. Maines has done. Even if there's a sexual history of prostitution, that doesn't excuse Mr. Maines' actions with respect to a particular victim, and that's what we're concentrating on. And, you know, I just think that the trial would have skittered off into a completely marginal, inflammatory, and hardly relevant factor to go taking each one of these victims and exploring their past. I mean, I can't imagine a trial judge allowing that to happen. Judge Wilkinson, my time is up, but if I may just respond very briefly. On the second issue, I think this folds in perfectly with our objection to the instruction. Had the jury been allowed to know that any of these women had been engaged in prostitution, had they been allowed to know that, and in one instance Judge O'Grady permitted that to happen, the jury would have been or could have been less likely to accept the instruction that any deception, or rather I have it backwards, they would have been more likely to accept the instruction they were given that any deceptive statement or misrepresentation was sufficient to meet materiality requirements. So that if one of these prostitutes had been a prostitute before, she would be less likely to be moved by a threat that she had to continue to be a prostitute to see her child. No, sir. But that one, no. But to be induced into engaging with my client to move with him and to wind up in a motel room, they wouldn't be surprised if they had the background in the jury. And seeing that they had the background wouldn't necessarily believe that it was a material misrepresentation that he made given their backgrounds. And it's in the dissenting opinion I quoted to you from the First Circuit. Judge Wesley explained that. Thank you. We appreciate that. And let's hear from Mr. Frank. May it please the Court. Michael Frank on behalf of the United States. I think Your Honors have correctly determined that this instruction given by the Court was absolutely correct. Admittedly, he did not use the magic word materiality. He also didn't use the magic words actus reus or mens rea. What did he do? He just instructed on those points. He told the jury what the mens rea requirement was. He told them what the actus reus requirement was. And he told them about materiality through his discussion of causation. I did want to correct one thing. My opposing counsel did say that it's an objective standard. Strictly speaking, the Second Circuit calls it a hybrid standard. I think other courts call it a modified reasonable person standard. It's not purely objective. It's objective from the basis of victims with the vulnerabilities that these victims had in the particular case. And that comes from the statute itself. So it's really a modified reasonable person standard. And that's what the court instructed the jury on. And, in fact, that's why the jury found as they did. Another key defect that I don't think was necessarily discussed here today. By the way, why? Just for our question, why is there a modified objective standard? Doesn't a reasonable man always take on the attributes of the person in that position? I've seen some cases where they don't take that. I'm asking you generally, a reasonable man standard, isn't that a reasonable person standard? Don't you look at what a person in those circumstances and those conditions, that's a reasonable person? I'm sorry, Your Honor, but I don't believe in every case that that is the case. So, for example, what might a reasonable person do if they're a drug addict? A drug addict might not be a reasonable person or might not be acting reasonably. But as you saw on the record in this case, many of these victims were drug addicts and would do things that- I don't know about that. What would a reasonable person do in those circumstances? I'm not sure. You won't take that into account to what the reasonable person would do. The reasonable person, would it be doing drugs in that circumstance? They might do it to prevent withdrawal, depending on how bad the withdrawal symptoms would be. I don't know why it wouldn't be just a question of whether the individuals at issue in this case, whether it would have caused them. And that would, I think, be more of a subjective standard. I don't know whether it's objective or subjective. It seems to me we can make it too complicated by half. It's just a question of whether these individuals that he took advantage of, gross advantage of, would have been- and led to commit or would have been sufficient to lead them to commit a commercial sex act. I just think that we can have angels dancing on the head of a pen and we get to these instructional issues and whether it's objective or whether it's subjective or whether it is. It's a question of whether these people would have been caused by this behavior to commit a commercial sex act. It seems to me straightforward enough. And that's how the jury was instructed, Your Honor, essentially. And you're right. The nomenclature, whether you call it objective, subjective, high- I just want to make a point, though. I take it, and I don't know why anybody would call it much beyond objective, but it was just a technical point because you wanted to talk about that. But I think if you want to make the point, there's no requirement that you have to show these people each subjectively felt the influence. Yes. They were so stated. Yes, Your Honor. That is one of the points. But the other point is also that to show that the court correctly instructed the jury. And that was one thing that was missing from the defendant's proposed instruction on this. The other thing I think that was really lacking in his instruction was the fact that it was going to focus solely on the fraud, whereas the statute is quite clear, as the court has noted, that you can use various means. Is that whole issue settled if we decide that the charge as a whole was appropriate? That's correct, Your Honor, because it would be read in its entirety. We don't just take out pieces of it. But, I mean, if we decide that the charge as given was appropriate and fair, do we have to go back and parse through why what he offered and wasn't included was incorrect in five, six, seven points? No, Your Honor. You don't have to. But the Lewis case says that's one thing. That's one of his burdens. He would have to show that his proposed instruction was correct as a matter of law. So I'm simply arguing no, it was not. That's one of its defects. Its other defect was the fact that anything that was important in that, namely the materiality part, was instructed upon by the court. And then the final thing that he also hasn't shown. Do you see his objection as he didn't get the charge he wanted or the charge as given was incorrect? I think his argument was both. I think he's deficient in both arguments. But I think he makes both arguments, as I understand them. But the key point, the third part that he misses, is also showing that this instruction was key to his defense. And he hasn't shown that either. Indeed, we quoted in our brief there where the defendant testifies. And he, in no uncertain terms, not once, but I think on two or three separate occasions, says, I didn't make promises. So, again, what difference does it make? If he didn't make promises, whether his promises were material or not. So this certainly didn't hamper the defense in any way because the defendant himself said he didn't make promises. I don't know about that. It might hamper his defense if somebody else said he made promises. Well, and that's what certainly many of the individuals did. But the key part of his defense was, I didn't make any promises, material or otherwise. But the other problem, and, again, the court correctly instructed on this, was you don't look at just the fraud. And so let's take Lacey Kershane as an example, since that's the defendant's, the victim he selected to discuss. Fraud was used with Ms. Kershane in numerous instances, but there was also coercion. And the jury was properly instructed to look at those together. So when Michael Mains meets Lacey Kershane, he tells her, I'm a construction worker. Completely false. He's a career pimp. He tells her, hey, I'm going to see my family up in Virginia. False. He's going to Virginia to prostitute women. He tells her, I'd like you to come up there. Doesn't mention anything about prostitution. Gets her to come up. Gets her to send her child to another woman. At some point, he gets her child up to Charlottesville, Virginia, and uses the child as leverage. You don't get to see your child until you start producing money. And the record is clear on that. Michael Mains' girlfriend, co-conspirator Brittany Walker said, yes, that was one of his common things. He would withhold children from women, tell them you don't get to see your children unless and until you pay the money that we're asking for. Let me ask about that issue in relation to the evidentiary objection. So you've got evidence of both fraud and coercion here. And Mr. Bodner in his brief suggested, at least with respect to the issue of fraud, that it was error. It was an abuse of discretion for the judge not to allow evidence of some of these victims' alleged prior prostitution activity. I suppose making a distinction between fraud and coercion. Is that a valid distinction in your mind? No. Could it be in some? No, Your Honor. Could it be in some cases? Yes, but not in this case. So if you delve down into the record, for example, Brittany Lease, that was another woman whose child was taken from her and withheld. She had previously been prostituted by Michael Mains. Came back when she got out of, she initially was prostituted after she left foster care. She came back to him. The court allowed the defense to get into that, that she had previous involvement in prostitution. Lacey Kershane, she had lived with a man who apparently was prostituting women. The court allowed the jury to hear about that. The sole thing that the defendant complains about that's in the record, at some point Brittany Lease contacts someone else who she refers to as Daddy. It's very common for sex traffickers to require victims to refer to them as Daddy. He told the defense that he couldn't get into the fact that she contacted someone by the name of Daddy. Was it her real father? Probably not because she grew up in foster care. We just don't know. I think it's a safe presumption it was a pimp. Was that a violation of his Confrontation Clause rights and or abuse of discretion? I think clearly not. The trial judge has some latitude in this kind of matter under Delaware v. Van Arsdale. You always worry about a mini-trial within a trial. And eventually it gets to be, you move from legitimate cross-examination to putting the victims rather than the defendant on trial. It's the defendant that's on trial, not the victims. They're not on trial. They should be cross-examined, certainly with that. But, you know, for purposes of the trial, they've done nothing wrong. They've been taken advantage of, terrible advantage of. And it shouldn't get to the situation where they are the ones essentially on trial when they've been put through this. That's absolutely correct, Your Honor. And that's why I just don't see that there was any abuse of discretion here. In fact, the judge allowed defense-wide latitude on that. He just said you're not going to get into whoever this Daddy was. I just don't see that as an abuse of discretion. I just want to point out he allowed a good bit of this. That's correct, Your Honor. Do you have anything further? Not on that. I just wanted to point out to the Court that there was an excellent decision on a number of these issues, specifically the 412 issue by the Seventh Circuit since briefing occurred. It's United States v. Carson at 870 Fed Third 584. What's the name of it? United States v. Carson. Okay. And the site is 870 Fed Third 584. 870 what? 870 Fed Third 584. And unless the Court has any additional questions for me, then I will cede the rest of my time. Thank you, gentlemen. You have some rebuttal time. I hesitate to come back because I hear the Court. I just wanted to make these few points, and it won't consume all of my time, that's for certain. Number one, about Mr. Maine's instruction number three at the Joint Appendix, page 50, I don't believe the instruction is erroneous. It includes all the elements in the statute that could induce somebody, the fraud, the coercion, et cetera. And it's really a definitional section, and the reason it was offered by the defendant is because the judge didn't instruct on the materiality. That's what I understand from trial counsel. In addition to that, what is the line between sex trafficking and simple prostitution? There has to be a difference between the two because we all know that prostitution for commercial purposes certainly is, and I guess that's the definition of prostitution, is unlawful. But what makes this different so that there's a 15-year minimum sentence? Why is sex trafficking that much more worse than prostitution? It is because of these elements. What is it that induces the person? And that's why we thought that the instruction, and as I heard Judge Wilkinson speaking about putting these victims on trial, if they are not, in a sense, true victims because, from the defendant's standpoint at least, they have been there and they know what the trade is, what is it that caused them to cross the line from prostitution into being victims of sex trafficking? Usually there's violence. It's a question of whether it's voluntary or whether there is involuntary. And the statute lists several means of fraud, coercion, duress, et cetera, which takes it into the involuntary realm. And that's something that certainly could have been used in a jury argument or a closing argument to a jury that we were doing this voluntarily, but the jury didn't see it that way. And I guess trial counsel would have argued, had he had the instruction and the definition that he wanted the jury to have, that some of these representations were not the kinds of things that they could reasonably rely upon. Well, first of all, he lets you have a lot of that evidence. I think that my colleague is mistaken at least in one respect, and that was the ruling that we objected to because he allowed my client's counsel to cross-examine the witness as to whether she could reach out to people because she still had her cell phone. The judge permitted that. What he excluded was that there was a text message from her to Daddy, and Daddy signified prostitution. That's how she regarded her pimp, and the judge excluded that evidence because he didn't want the jury to know that she had engaged in prostitution before. There was no evidence in the record to show that she had engaged in prostitution before, and the jury could have seen the case differently had they known that. And that's why we believe that the materiality instruction or the definition of materiality was important in this case. I think the district court was thinking that the fact that you may have engaged in prostitution in the past simply doesn't address itself, whether there were coercive means in the present. I mean, you can make the argument, well, these people were predisposed to act in a voluntary way, but again, someone who may have been a prostitute in the past can nonetheless be coerced by this particular defendant. And the question really focuses on the means that he uses, which were especially hideous in this case. And setting quotas for people in order to be able to send their children, in order to be able to see their children, that seems to fall into a sex trafficking offense because that's not how prostitution normally works. Well, I agree with that. I agree with that, but that wasn't the case with all the defendants. But with that, I appreciate the court's hearing us. Well, I see you're court-appointed, Mr. Bidner, and we really appreciate your efforts. You've done a fine job for your client, and the court wishes to thank you. Well, I appreciate that, Your Honor. We'll come down and greet counsel and go directly into our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Albert Diaz